United States District Court
Southern District of Texas

**ENTERED**

January 23, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MMA LAW FIRM, PLLC,** | § | |
| | § | |
| *Plaintiff/Appellee,* | § | CIVIL ACTION NO. 4:24-CV-4446 |
| **VS.** | § | |
| | § | |
| **MORRIS BART, LLC,** | § | ADVERSARY PRO. NO. 24-3127 |
| | § | |
| *Defendant/Appellant.* | § | |

## ORDER

This Court has before it multiple pending civil actions arising from various adversary proceedings in the Bankruptcy Court for the Southern District of Texas, *In re: MMA Law Firm, PLLC*, No. 24-31596 (Bankr. S.D. Tex.). This matter is part of the ongoing disputes over the collection of attorneys' fees and costs in thousands of underlying cases filed in Louisiana. Throughout the course of the somewhat contentious proceedings in the Bankruptcy Court, the parties have appealed or brought directly several different issues to this Court—spanning from discovery-related disputes to dispositive motions. As a result, this Court has remained involved in various stages of these somewhat complex adversary proceedings. In fact, after Morris Bart, LLC ("Morris Bart") invoked its Seventh Amendment right to a jury trial, this Court withdrew the reference to the Bankruptcy Court for any matters concerning the dispute over attorneys' fees or costs but referred all pretrial proceedings back to the Bankruptcy Court. (No. 4:24-CV-4446, Doc. Nos. 5, 21).[1] That dispute over attorneys' fees and costs is the heart of the underlying adversary proceeding and the immediate subject of this summary judgment analysis.

---

[1] Due to the complex procedural nature of this proceeding, this Order requires docket citations for at least four different civil actions pending in the Southern District of Texas. For clarity, any citations to a docket entry will include the cause number and the corresponding docket number. Many of these references are to filings in No. 4:24-CV-4446 and No. 4:25-CV-4059. While those cases were consolidated into No. 4:24-CV-4446, (No. 4:25-4059, Doc. No. 17), the citations are

This litigation is currently in the summary judgment stage, though the procedural posture leading up to this Order is somewhat unusual. Pending before this Court is the resolution of (1) Morris Bart's Motion for Summary Judgment filed directly in this Court in Civil Action No. 4:24-CV-4446 (Doc. No. 19) and (2) Morris Bart's appeal of the Bankruptcy Court order denying a similar Motion for Summary Judgment filed in the underlying adversary proceeding. (Bankr. No. 24-3127, Doc. Nos. 96, 104, 105). That appeal is pending before this Court in Civil Action No. 4:25-CV-4059. For the ease of the parties, the Court consolidated these two civil actions into Civil Action No. 4:24-CV-4446. (No. 4:25-4059, Doc. No. 17).[2] Upon review of the relevant pleadings, admissible summary judgment evidence, and relevant legal standards, this Court finds that, with two exceptions, McClenny Moseley and Associates, PLLC ("MMA") voluntarily and knowingly waived its right to collect attorneys' fees or costs in any case pending in the Eastern District of Louisiana on or before March 15, 2024. The Bankruptcy Court order denying Morris Bart's Motion for Summary Judgment (Bankr. No. 24-3127, Doc. No. 104, 105) is reversed-in-part. Morris Bart's Motions for Summary Judgment filed in that proceeding and the one filed directly with this Court

---

to pre-consolidation filings referenced by the original cause number. Additionally, the Court notes that there are several Louisiana-based actions that impact the disbursement of attorneys' fees. These cases have been heavily cited by the parties and are referenced throughout this Order.

[2] The Motion for Summary Judgment filed directly with this Court (No. 4:24-CV-4446, Doc. No. 19) was filed in the action wherein this Court withdrew the reference from the Bankruptcy Court for "all matters concerning the fees in the Former Cases collected by Morris Bart and those claimed in the Former Cases by MMA." (No. 4:24-CV-4446, Doc. No. 5). Morris Bart filed the Motion for Summary Judgment in that matter on May 21, 2025. (No. 4:24-CV-4446, Doc. No. 19). On June 18, 2025, Morris Bart filed an identical Motion for Summary Judgment in the underlying adversary proceeding in the Bankruptcy Court. (Bankr. No. 24-3127, Doc. No. 96). The appeal of the Bankruptcy Court order denying the Motion for Summary Judgment is also before this Court in Civil Action No. 4:25-CV-4059. The Court has consolidated these two cases for ease of consideration.

(No. 4:24-CV-4446, Doc. No. 19) are granted-in-part. Following the entry of this Order, the Court will enter an order severing this issue into a new cause number to make it final and appealable.

## I.     Factual Background

In 2021, Hurricane Ida made landfall across the Louisiana coastline. As the worst storm to hit the State since Hurricane Katrina, Hurricane Ida undoubtedly caused severe damage to a great many properties with high winds, heavy rainfall, and flooding. In the wake of the devastation, a Houston-based law firm, McClenny Moseley and Associates, PLLC, began marketing its services to potential claimants with property damage from the storm. (No. 4:24-CV-4446, Doc. No. 19-1 at 5). While there is a significant dispute over the exact scope of the alleged marketing services, it is undisputed that MMA utilized a company called Velawcity to promote the law firm to potential Hurricane Ida-related claimants, and Velawcity also helped MMA manage the client intake process.[3] (*Id.* at 9). Through this marketing strategy, MMA represented (or, at least, represented to Louisiana courts that it represented) hundreds, if not thousands, of Hurricane Ida claimants in cases filed primarily against their home insurance companies. (*Id.* at 5).

These cases were filed in federal and state courts across Louisiana. Some courts became particularly concerned with MMA's management of such a substantial docket and whether its use

---

[3] There is a significant dispute over the role of Velawcity in this litigation. On the one hand, MMA contends that Velawcity's role was an ethical use of marketing services. (No. 4:24-CV-4446, Doc. No. 22 at 7). On the other hand, Morris Bart, among other things, argues that Velawcity was engaged in unethical practices, as well as the unauthorized practice of law. (No. 4:24-CV-4446, Doc. No. 19 at 18–20). For the limited purpose of this Order, the Court need not determine the exact role of Velawcity in any communications with the clients, or whether, as a matter of law, the use of Velawcity violated some law or ethics rule. Nothing in this Order should be construed as a finding on the legal or ethical standards governing the use of Velawcity. A resolution of this issue is not necessary to reach a determination at this stage of the summary judgment pleadings. Nevertheless, courts across Louisiana have made factual and legal conclusions about the role of Velawcity. This Court references those findings here for the sole purpose of adding context to this Order, but this Court does not necessarily adopt those findings.

of Velawcity and other marketing strategies violated the State's ethical rules. For example, in the United States District Court for the Eastern District of Louisiana, Chief Magistrate Judge Michael North held several proceedings related to the alleged misconduct of MMA in these cases—including its use of Velawcity to obtain clients. Judge North described Velawcity as a "modern-day case runner" that "violated multiple ethical rules and, quite possibly, Louisiana law." *Franatovich v. Allied Tr. Ins. Co.*, 2023 WL 7005861, at *1, *11 (E.D. La. Mar. 16, 2023). He also described the relationship between MMA and Velawcity as "a brazen, multi-faceted campaign" that utilized Velawcity as non-lawyer marketers "to directly solicit prospective clients and to obtain written contingency-fee contracts from those persons . . . before the 'client' ever spoke with a lawyer associated with MMA, much less <u>any</u> lawyer." *Id.* at *1, *12 (emphasis in original). Considering these findings, Judge North held that MMA's conduct constituted an "overt and knowing violation of Rule 11" and imposed monetary sanctions on the firm. *Id.* at *12.

MMA's ability to manage its Hurricane Ida docket apparently went quickly downhill.[4] After the *Franatovich* order, "all of the Louisiana-licensed attorneys at MMA [] resigned from the firm and withdr[ew] from all cases they had filed on behalf of insureds with Hurricane Ida claims." (No. 4:24-CV-4446, Doc. No. 19-31 at 1). Obviously, these clients needed new attorneys to represent them and/or to bring their cases to a conclusion. In many of these cases, former MMA

---

[4] The Declaration of John Zachary Moseley ("Moseley Declaration"), the managing member of MMA, states that "[a]fter negative orders were entered by Louisiana District Courts and the licenses of MMA's attorneys were suspended in Louisiana, MMA was no longer able to represent its clients in that state." (Bankr. No. 24-3127, Doc. No. 94-1 at ¶ 13). One must keep in mind that the most critical orders and dates they were issued were: *In re: Richard William Huye III*, No. 2023-B-00277 (La. Mar. 3, 2023), *Franatovich v. Allied Tr. Ins. Co.*, 2023 WL 7005861 (E.D. La. Mar. 16, 2023), and *In re McClenny, Moseley & Associates, PLLC*, No. 3:23-mc-00062 (W.D. La. Aug. 22, 2023) (Doc. No. 37), *rev'd on other grounds*, 2024 WL 2874371 (5th Cir. 2024). These orders were all issued well before MMA filed for bankruptcy and well before the waiver issue arose in the Eastern District of Louisiana. Thus, by the time the events pertinent to this matter occurred, MMA admits that it was already incapable of representing its Louisiana clients.

clients turned to Morris Bart, a Louisiana-based law firm.[5] (No. 4:24-CV-4446, Doc. No. 19-32). As Morris Bart began its representation of these clients, the distribution of attorneys' fees and the payment of litigation costs became relevant to any final settlement. Moreover, in order to complete the resolution of the claims, the defendant insurance companies needed to know if MMA retained any interest in the settlement funds by virtue of its contingent fee contracts. This issue created a need to address whether—after all of the alleged misconduct and mismanagement of these cases— MMA was entitled to attorneys' fees or costs at all. *Ricks v. Imperial Fire & Cas. Ins. Co.*, No. 23-2844, 2024 WL 1750738, at *4 (E.D. La. Apr. 5, 2024).

In order to resolve this Eastern District-wide problem, Judge North ordered MMA to "show cause why, by virtue of the numerous established instances of its misconduct in this District . . . MMA has not forfeited the right to recover fees and/or costs from its former clients who settle their claims pro se or with the assistance of new counsel." *Ricks*, No. 23-2844 (E.D. La. Jan. 31, 2024) (Doc. No. 31). In response to this order, MMA argued that there was no active case or controversy for the court to decide because it did not intend to seek fees in the *Ricks* case, so "such a categorical approach . . . to determine MMA's entitlement to attorney's fees on a docket-wide basis . . . would be improper." *Ricks*, No. 23-2844 (E.D. La. Feb. 14, 2024) (Doc. No. 36). In other words, MMA argued that the court did not have jurisdiction to determine whether its conduct effectively forfeited its right to attorneys' fees and costs in other Hurricane Ida cases because it was not seeking fees in the *Ricks* case. *Id.* The *Ricks* court held the show cause hearing on February 21, 2024. *Ricks*, No. 23-2844 (E.D. La. Feb. 21, 2024) (Doc. No. 41).

---

[5] The Moseley Declaration also states that "at least 1,524 [] clients formally substitute[ed] Morris Bart in place of MMA." (Bankr. No. 24-3127, Doc. No. 94-1 at ¶ 17). The total number of underlying cases—including those cases in which other Louisiana law firms became the successor law firm—involved in this bankruptcy proceeding exceeds 2,000. Thus, Morris Bart took over a substantial part of the MMA's Hurricane Ida docket.

After the hearing, counsel for the insurance company filed a supplemental brief related to whether the *Ricks* court had jurisdiction to issue a district-wide order to address whether MMA was entitled to attorneys' fees and costs. *Ricks*, No. 23-2844 (E.D. La. Feb. 28, 2024) (Doc. No. 45). The brief argued that although MMA waived its right to seek attorneys' fees or costs in the *Ricks* lawsuit, the issue was not moot, as "a lender, Equal Access Justice Fund . . . claim[ed] that it ha[d] a 'fully perfected security interest in [MMA]'s fee interest in' the cases transferred" to successor law firms. *Id.* Thus, as counsel for the insurance company contended, MMA's waiver of fees in the *Ricks* case would not prevent MMA's litigation lenders from attempting to collect the fees and costs; whereas, "if the [c]ourt rule[d] that MMA is ineligible for fees, it effectively extinguishes both MMA's and the [lender's] claims to those fees, eliminating the grounds for the [lender] to later challenge MMA's fee waiver." *Id.*

In response, MMA reiterated the same jurisdictional argument: the *Ricks* court could not determine whether MMA was eligible for fees across all Hurricane Ida cases because MMA had waived its right to fees in the *Ricks* case. *Ricks*, No. 23-2844 (E.D. La. Mar. 15, 2024) (Doc. No. 47). MMA additionally represented that it "does not intend to intervene in any cases pending in [the Eastern District] to seek attorneys' fees or costs." *Id.* MMA qualified this waiver with a footnote stating that "MMA does not waive any rights, other than to notify the [c]ourt that it does not intend to file interventions in any cases in this [c]ourt." *Id.* The footnote also stated that "MMA specifically reserves the right to institute proceedings against successor law firms like Daly & Black to advance any claims it may have for breach of contract, or any other remedy it may pursue under the law, against any firms that have caused MMA redressable harm." *Id.*

In response to this "non-waiver" statement, the court ordered MMA to provide "**a complete and comprehensive list of every case currently pending in this District in which it intends to**

**seek attorneys' fees and/or costs**." *Ricks*, No. 23-2844 (E.D. La. Mar. 25, 2024) (Doc. No. 49) (emphasis added). In response to this order, MMA filed a "List of Cases Currently Pending in the Eastern District of Louisiana in Which Non-Party MMA **Intends to Seek Attorneys' Fees and/or Costs**." *Ricks*, No. 23-2844 (E.D. La. Mar. 29, 2024) (Doc. No. 50) (emphasis added). In the event its objection to the court's jurisdiction was overruled, MMA once again stated that it "maintains that **there are no [Eastern District] cases in which it intends to intervene or file liens to recover attorney's fees**." *Id.* (emphasis added). Further, MMA represented that it "does not intend to intervene in any cases pending in this [c]ourt, **so there is no list to provide reflecting pending [Eastern District] cases in which MMA intends to seek attorney's fees**." *Id.* (emphasis added).

MMA's blanket waiver was made with only two exceptions: MMA stated that it was "considering filing lawsuits against Daly & Black and Galindo Law, which MMA believes have breached agreements with MMA and which have taken action that may give rise to various causes of action for relief related to Daly & Black's and Galindo Law's handling of Hurricane Ida claims for former clients." *Id.* "**In a good faith attempt to comply with the [c]ourt's order**," MMA provided a list of all of the cases "**in which it intends to seek attorneys' fees and/or costs**" including only those cases in which either of those two firms was the successor law firm. *Id.* (emphasis added). This list only referred to fees that may "be at issue in a potential future lawsuit." *Id.* MMA repeatedly referred to Daly & Black and Galindo Law as the only two law firms from which it intended to seek fees or costs through future litigation. MMA never mentioned Morris Bart or any other firm or lawyer, and it did not list any of their cases on this all-inclusive list.

After holding the show cause hearing and reviewing the briefing, Judge North, relying on the totality of these representations, held that "the multiple affirmative statements in multiple briefs filed with [the court] that it would not seek to recover fees and/or costs from cases pending [in the

Eastern District] constitutes a voluntary and knowing waiver of any right to do so." *Ricks*, 2024 WL 1750738, at *4. Judge North also held that "MMA has knowingly and completely waived its rights to intervene or otherwise seek to recover fees and/or costs in this or any other lawsuit pending in this District." *Id.* at *6. United States District Judge Sarah Vance adopted the *Ricks* Report and Recommendation without objection on April 23, 2024. *Ricks v. Imperial Fire & Cas. Ins. Co.*, No. 23-2844, 2024 WL 1740172 (E.D. La. Apr. 23, 2024).

On April 9, 2024—five days after the *Ricks* order referenced above held that MMA voluntarily and knowingly waived its right to collect fees or costs in any pending case in the Eastern District—MMA filed for Chapter 11 bankruptcy in the Southern District of Texas. (Bankr. No. 24-31596, Doc. No. 1).

Once in bankruptcy, MMA filed an adversary proceeding against Morris Bart (and other successor law firms) to seek reimbursement for attorneys' fees and costs resulting from the Hurricane Ida cases. (Bankr. No. 24-3127, Doc. No. 1). These proceedings include an attempt to recover the very fees that MMA told Judge North it would not seek. Morris Bart then filed Motions for Summary Judgment in this Court and in the Bankruptcy Court adversary proceeding to argue that, as a matter of law, MMA is not entitled to attorneys' fees or costs. Among the grounds raised in the summary judgment motions is the fact that all Eastern District fees and costs (with the exceptions of the two law firms noted above) have been waived. The Bankruptcy Court denied the Motion, and its order is now on appeal in this Court. The Motion for Summary Judgment filed directly in this Court is still pending. Both sides have briefed the issue. Since both cases concern the same issues, the Court consolidated the cases into the oldest cause number. Given that this Court must review the Bankruptcy Court order *de novo* and that the same Motion for Summary Judgment (the subject of the Bankruptcy Court order) is still pending in this Court, this Court will

address the pending Motion for Summary Judgment (No. 4:24-CV-4446, Doc. No. 19) and the appeal of the Bankruptcy Court order denying summary judgment (No. 4:25-CV-4059) together in this Order. *In re Webb*, 954 F.2d 1102, 1103 (5th Cir. 1992); *In re Miller*, 156 F.3d 598, 501 (5th Cir. 1998).

## II.    Legal Standards

The Court will use the traditional summary judgment standard to conduct the analysis below. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara*

*v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.    Analysis

In its Motion for Summary Judgment, Morris Bart offers two theories to establish that MMA is not entitled to attorneys' fees or costs in the underlying Hurricane Ida cases. First, Morris Bart argues that since MMA violated substantive state law and the general ethical standards in Louisiana, MMA should be precluded from recovering any fees or costs. Second, and in the alternative, Morris Bart argues that even if Louisiana state law does not bar MMA from recovering fees or costs, MMA voluntarily and knowingly waived any right to fees or costs in any case that was pending (or may still be pending) in the Eastern District of Louisiana. This Order addresses the latter.

At the outset of this analysis, the Court notes that the majority of the briefing on summary judgment addresses the former issue, so it involves Louisiana state law and ethical standards. Morris Bart briefed an intricate argument that the combination of certain case law on the collection of attorneys' fees, the Louisiana civil code, and the Louisiana Rules of Professional Conduct bars MMA from collecting any attorneys' fees or costs. Given the nature of the subject of this litigation and the somewhat dramatic history that Louisiana courts have with MMA, this Court plans to submit a certification request to the Supreme Court of Louisiana with certain questions related to the substantive state law that relate to the claim that MMA is precluded from recovering attorneys' fees or costs. This Court is hopeful that, if accepted, the response to the certification by the Supreme Court of Louisiana will provide significant guidance toward the resolution of the overall litigation. Consequently, this Order will not broach the topics that will be addressed in the certification request. Until this Court receives the response from the Supreme Court, it will reserve

10

any ruling on the substantive state law issues that may affect each of the underlying cases in various different judicial venues in Louisiana, not just those stemming from the Eastern District.

Nevertheless, the record is sufficient to address the second argument set forth in the Motion for Summary Judgment: did MMA waive its right to collect attorneys' fees or costs in the Eastern District of Louisiana? If so, can MMA, through the magic of bankruptcy, "undo" such a waiver and claim the fees or costs as a part of its bankruptcy estate? The Court proceeds with the analysis below and finds, as a matter of law, that MMA did voluntarily and knowingly waive any right to collect attorneys' fees or costs from any case that was pending in the Eastern District of Louisiana on or before March 15, 2024, the date on which MMA first represented to the Eastern District that it waived its right to any attorneys' fees or costs. Therefore, this Court grants-in-part Morris Bart's Motion for Summary Judgment (No. 4:24-CV-4446, Doc. No. 19) and reverses the Bankruptcy Court order denying summary judgment as it relates to any case that emanates from the Eastern District of Louisiana.

## A. The Waiver

While this Court has already provided some background, it will endeavor to cover the pertinent (and somewhat contentious) history of the relevant Hurricane Ida litigation—with a focus on the tension between Louisiana courts and the conduct of MMA. This history includes several different court orders in different jurisdictions—issued both before and after MMA filed for bankruptcy here in the Southern District of Texas. The parties argue that the Bankruptcy Court here and the courts of the Eastern District of Louisiana are polarized when it comes to what the other court orders mean, and which court has jurisdiction over what. While this alleged conflict may appear to be somewhat unusual—as all courts tend to afford each other a certain level of comity—it also may be somewhat expected given this unusual multi-jurisdictional fact pattern.

11

Nevertheless, this Court finds that the perceived conflict does not prevent an orderly disposition of this issue.

As discussed above, the attorneys' fees and costs dispute arises from a multitude of underlying cases that stem from the damage caused by Hurricane Ida. In the immediate aftermath of the storm, lawyers—both in-state and from outside of Louisiana—began to seek clients. Well before MMA filed for bankruptcy or the hearing or rulings at issue in this proceeding occurred, the Louisiana courts (both state and federal) were not only burdened with an avalanche of cases but were also faced with a number of ancillary problems created by allegations of misconduct taken by unscrupulous lawyers and law firms. MMA and its lawyers (and agents) were the primary focus of much of the criticism in this judicial drama. This Court need not go into detail about the various misdeeds that allegedly occurred throughout this Hurricane Ida litigation, but it does feel that there is a need to set the stage for what happened next—especially as it pertains to the eventual waiver of attorneys' fees and costs.

To that end, the Court will briefly quote from two federal district court opinions—one from the Eastern District of Louisiana and one from the Western District of Louisiana. As one can readily see, these opinions include descriptions of various actions that would certainly grab the attention of any legal ethics professor. In the Eastern District, Chief Magistrate Judge Michael North wrote:

> Since first appearing in this District less than a year ago, [MMA] and its attorneys, in particular Zach Moseley ("Moseley") and R. William Huye, III ("Huye"), have engaged in a pattern of misconduct on a scale likely never before seen here. The record in these cases establishes that they have undertaken a brazen, multi-faceted campaign to enrich themselves with ill-gotten contingency fees paid to them by unwitting insurance companies ostensibly on behalf of named insureds that they and their firm did not represent.
>
> They have lied to numerous insurance carriers claiming to represent insureds who had never heard of them; they have invoked appraisal and even filed lawsuits on behalf of people they knew they did not represent; they have, through non-lawyer agents in faraway places, directly solicited insureds who had never previously

reached out to them; they have filed cases in multiple districts on behalf of insureds they did represent in which they sued the wrong insurance company; they have paid millions of dollars to an advertising firm to act as their agent to "deliver" pre-screened clients and signed contingency-fee agreements to their firm at a rate of $3,500.00 per contract; they have failed to disclose known conflicts to potential clients; and they have lied to the judge in open court.

If only this were hyperbole–alas, it is all established fact, proven by MMA's own statements and documents they have produced that are now in the record. I've been a lawyer for 25 years–I have never seen a clearer or more shameless series of violations of Federal Rule of Civil Procedure 11 and the Rules of Professional Conduct than what confronts us here. What is less clear is: What will be the ultimate impact of the violations and misconduct catalogued here on the Court and, far more importantly, on the policyholders of this District who continue to await resolution of their Hurricane Ida claims because of MMA's misconduct?

*Franatovich*, 2023 WL 7005861, at *1.

The Western District of Louisiana recounted similar experiences with MMA.

United States District Judge James D. Cain wrote:

Due to the continued misconduct of current MMA attorneys, the suspensions by this Court and the Louisiana Supreme Court of said attorneys, and the Louisiana Insurance Commissioner's Cease and Desist letter, this Court extended its suspension of MMA and its attorneys.

Because of MMA's abrogation of their duty and responsibility toward these Louisiana residents, the Court finds that MMA is not entitled to any attorney fees, costs and/or expenses either pending in this Court or in the list herein attached as Exhibit "A." MMA's clear solicitation of clients voids any contract of representation. In addition, their continued unethical behavior including but not limited to mishandling of client trust funds, failure to deposit client funds into a properly registered IOLTA trust account in the State of Louisiana, and MMA's clear abrogation of their representation of alleged clients evidenced by sending out emails and text messages with the phone number of this District Court to their alleged Louisiana Clients and instructing them to contact this Court for status updates on their cases, nullifies any ownership, fee interest, and/or property interest of MMA, its attorneys or any related entity or third party. This Court further rules that MMA, its attorneys or any related party have no property or ownership interest in the checks or funds identified in Exhibit A. This includes any claims made under state or federal law.

*In re McClenny, Moseley & Associates, PLLC*, No. 3:23-mc-00062 (W.D. La. Aug. 22, 2023) (Doc.

No. 37), *rev'd on other grounds*, 2024 WL 2874371 (5th Cir. 2024).

Even the Supreme Court of Louisiana found that the lead Louisiana lawyer for MMA, Richard William Huye III, participated in less than stellar conduct. It suspended him on an interim basis for "threat of harm" to the public. *In re: Richard William Huye III*, No. 2023-B-00277 (La. Mar. 3, 2023).

It can easily be seen from the cases cited above that two of the three federal District Courts of Louisiana and the Supreme Court of Louisiana uniformly found the tactics and behavior of MMA and its lawyers (and agents) to be inappropriate. These orders were filed well before the series of hearings and orders relevant to the issue of waiver and well before MMA chose to file bankruptcy. The importance of these summaries is that the relevant briefing and subsequent hearings on attorneys' fees and costs—which the Court will detail below—did not happen in a vacuum. There was already an extensive history of tension between MMA and the state and federal courts in Louisiana. MMA and its lawyers and agents were accused of misbehavior on a massive statewide scale, which affected its ability to represent its clients, and consequently, affected hundreds, if not thousands, of Louisianans that had already suffered losses from the impact of Hurricane Ida.

The Court now turns to the series of events that led to the waiver of attorneys' fees and costs in the Eastern District. Initially, the Court finds it helpful to set out a short timeline of relevant orders, and then this Court will flesh out the surrounding circumstances, relevant court hearings, and the ultimate rulings that got the parties to this point. The following chronology may set the scene of the present dispute:

1. **January 31, 2024** – Order on Rule to Show Cause filed in *Ricks v. Imperial Fire and Cas. Co.*, No. 23-2844 (E.D. La. Apr. 5, 2024) (Doc. No. 31). The court ordered MMA to "show cause why, by virtue of the numerous established instances of its misconduct in this District

. . . MMA has not forfeited the right to recover fees and/or costs from its former clients who settle their claims pro se or with the assistance of new counsel." *Id.*

2. **February 14, 2024** – MMA filed its Response to the Court's Show-Cause Orders in *Ricks*, No. 23-2844 (E.D. La. Feb. 14, 2024) (Doc. No. 36). MMA argued the court did not have jurisdiction to enter a docket-wide order on attorneys' fees and costs because MMA waived its right to any fees and costs in the *Ricks* case. *Id.*

3. **February 21, 2024** – Show Cause Hearing held in *Ricks*, No. 23-2844 (E.D. La. Apr. 5, 2024) (Doc. No. 41).

4. **February 28, 2024** – Plaintiff filed a Supplemental Brief in *Ricks*, No. 23-2844 (E.D. La. Feb. 28, 2024) (Doc. No. 45). Plaintiff argued that MMA's waiver did not moot the issue as to its eligibility to receive attorneys' fees and costs. *Id.*

5. **March 6, 2024** – The court entered an order requiring MMA to provide "a complete and comprehensive list of every case currently pending in this District in which it intends to seek attorneys' fees and/or costs." *Ricks*, No. 23-2844 (E.D. La. Mar. 6, 2024) (Doc. No. 46).

6. **March 15, 2024** – MMA filed a Supplemental Brief in *Ricks*, No. 23-2844 (E.D. La. Mar. 15, 2024) (Doc. No. 47). MMA stated that it "does not intend to intervene in any cases pending in [the Eastern District] to seek attorneys' fees or costs." *Id.*

7. **March 25, 2024** – The court entered another order requiring MMA to provide "a complete and comprehensive list of every case currently pending in this District in which it intends to seek attorneys' fees and/or costs." *Ricks*, No. 23-2844 (E.D. La. Mar. 25, 2024) (Doc. No. 49).

15

8. **March 29, 2024 –** MMA filed a "List of Cases Currently Pending in the Eastern District of Louisiana in Which Non-Party MMA Intends to Seek Attorneys' Fees and/or Costs." *Ricks*, No. 23-2844 (E.D. La. Mar. 29, 2024) (Doc. No. 50). MMA maintained that there were "no [Eastern District] cases in which it intend[ed] to intervene or file liens to recover attorneys' fees." *Id.* However, MMA provided a list of over 150 cases—involving Daly & Black law firm—that "may be at issue in a potential future lawsuit." *Id.* Consequently, MMA did not list any cases involving any plaintiff (other than those involving the Daly & Black and Galindo Law firms) in which it "intended to seek attorneys' fees and/or costs." *Id.* Pertinent to the pending motions, no Morris Bart cases were listed.

9. **April 5, 2024 –** Order and Recommendation of Chief Magistrate Judge Michael B. North in the Eastern District of Louisiana filed in *Ricks*, 2024 WL 1750738 (E.D. La. Apr. 5, 2024). The court held that MMA knowingly and voluntarily waived its right to any attorneys' fees and costs in any case pending in the Eastern District of Louisiana.

10. **April 9, 2024 –** MMA filed for bankruptcy in Houston, Texas. The case was assigned to Chief Bankruptcy Judge Eduardo Rodriguez. (Bankr. No. 24-31596, Doc. No. 1).

11. **April 23, 2024 –** The Report and Recommendation in *Ricks* was adopted by Judge Sarah Vance in the Eastern District of Louisiana. *Ricks v. Imperial Fire & Cas. Ins. Co.*, 2024 WL 1740172 (E.D. La. Apr. 23, 2024).

12. **June 24, 2024 –** MMA initiated the adversary proceeding against Morris Bart to collect attorneys' fees and costs from the underlying cases. (Bankr. No. 24-3127, Doc. No. 1).

13. **July 15, 2024 –** Chief Judge Rodriguez entered a preliminary injunction against Morris Bart. (*Id.* at Doc. No. 31).

14. **December 12, 2024** –Chief Magistrate Judge North filed an order in *Foskey v. American Modern Prop. And Cas. Ins. Co.*, No. 23-5316 (E.D. La. Dec. 12, 2024). (No. 4:24-CV-4446, Doc. No. 19-45).

15. **December 19, 2024** – The Eastern District of Louisiana issued an *en banc* order governing all Hurricane Ida cases. (*Id.* at Doc. No. 19-46).

Obviously, over the course of this litigation, there have been several orders (including some issued by this Court) entered by all of the judges involved in these cases on a variety of subjects, but those mentioned above are the ones most relevant to the issue of waiver that is presented on appeal and is before this Court in the summary judgment briefing. The most pertinent order is Judge North's pre-bankruptcy *Ricks* order, which was not challenged or appealed and was ultimately adopted by Judge Vance. *Ricks*, 2024 WL 1750738. The *Ricks* order originated due to numerous complaints regarding MMA's apparent misconduct in the Eastern District and elsewhere and was the first order in the Eastern District to address the availability of attorneys' fees or costs.[6] The *Ricks* order, and the conduct proceeding it, are the lynchpins in this waiver dispute. Therefore, this Court analyzes it in detail.

Leading up to the *Ricks* order, the parties in the underlying case requested the court to allocate attorneys' fees and expenses. (No. 4:24-CV-4446, Doc. No. 19-38). Judge North issued a show cause order directing MMA to demonstrate why—in the face of what the court considered to be rampant misconduct—the firm should have the opportunity to recover any fees or costs in

---

[6] The Western District of Louisiana had already ruled (in a case later reversed by the Fifth Circuit on notice grounds in *McClenny, Moseley & Associates PLLC v. Equal Access Justice Fund LLP*, 2024 WL 2874371 (5th Cir. 2024)) that MMA forfeited its rights to fees or costs in certain cases due to its "abrogation of their duty and responsibility." *In re McClenny, Moseley & Associates, PLLC*, No. 3:23-mc-00062 (W.D. La. Aug. 22, 2023) (Doc. No. 37). The recoverability of fees or costs (from cases that were or are pending) in the Western District is not an issue addressed by this Order.

any case in the Eastern District. (*Id.*). The parties were given ample time to brief the issues and to produce all supporting documentation, including documentation that explained how "this [*Ricks*] case was obtained by the firm." (*Id.*). Relying on this briefing, Judge North explained:

> In its responsive brief and at the show-cause hearing, **MMA argued that, because it was not seeking a fee or reimbursement of costs in this case, there was no live case or controversy remaining in the case**, such that proceeding with a hearing to determine MMA's rights to recover fees and/or costs in other cases pending in this District would violate Article III of the United States Constitution: "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold [parties] accountable for legal infractions."

> At the show-cause hearing, the Court indicated its tendency to agree with MMA's standing argument and indicated its hesitancy to undertake a docket-wide inquiry in this case for the reasons advanced by MMA in its brief. **At that point, counsel for Plaintiff, for the first time, suggested that, because two of MMA's lenders (Equal Access Justice Fund, LP and EAJF ESQ FUND, LP (hereinafter, the "Funds")) had issued "lien letters" to their firm in every case pending in this District in which MMA was former counsel, a case or controversy persisted in this case, based on the idea that MMA's voluntary relinquishment of the right to recover fees in this case could be construed as a breach of contract by MMA vis-à-vis the Funds, thus exposing Plaintiff's counsel to potential liability to the Funds.**

> The Court then ordered Plaintiff's counsel to file a supplemental memorandum fully briefing this somewhat novel argument, which they ultimately filed on February 28, 2024. Upon receipt of that brief, the Court ordered MMA to file a responsive brief and to produce to the Court a "complete and comprehensive list of every case currently pending in this District in which it intends to seek attorneys' fees and/or costs."

> On March 15, 2024, MMA filed its response. As to the standing argument advanced by Plaintiff's counsel, MMA bolstered its argument that no case or controversy exists here by attaching as an exhibit a letter from counsel for the Funds to MMA's counsel "waiv[ing] and release[ing] their respective security interest in attorneys' fees, if any, owed, due, or owing" to MMA arising out of this matter only.

> MMA went on to represent that "[w]ith respect to the second part of the Court's Order [supplying the Court with a list of cases pending in this District in which MMA will seek a fee], **MMA does not intend to intervene in any cases pending in this Court to seek attorneys' fees or costs.**"

The undersigned initially mis-read this last statement as applying to the *Ricks* matter only. This in turn led the undersigned to issue a second order suggesting that MMA was in violation of the March 6 Order for failing to supply the Court with the list of cases pending in this District in which it intended to seek a fee and ordering the firm to submit such a list within five days.

While MMA had not produced such a list, it was <u>not</u> in violation of the Court's March 6 Order **because it had informed the Court that it did not intend to intervene in <u>any</u> pending cases to seeks fees or costs**. In its response to this second order, MMA reiterated that

> as it stated in its March 15 pleading, **MMA maintains that there are no EDLA cases in which it intends to intervene or file liens to recover attorney's fees**. As MMA previously explained in response to the Court's March 6, 2024 Order, **MMA does not intend to intervene in any cases pending in this Court, so there is no list to provide reflecting pending EDLA cases in which MMA intends to seek attorney's fees.**

The MMA response went on to note that

> **MMA is considering filing lawsuits against Daly & Black and Galindo Law**, which MMA believes have breached agreements with MMA and which have taken action that may give rise to various causes of action for relief related to Daly & Black's and Galindo Law's handling of Hurricane Ida claims for former MMA clients.

The firm then attached a list of cases that appear to be those in which Daly & Black and/or Galindo Law are involved in this District.

**The Court finds that the multiple affirmative statements in multiple briefs filed with this Court that it would not seek to recover fees and/or costs from cases pending here constitutes a voluntary and knowing waiver of any right to do so.**

*Ricks*, 2024 WL 1750738 (internal citations omitted) (bold emphasis added).

In pertinent part, the actual pleading filed by the lawyers representing MMA (and relied

upon by Judge North) stated:

> On March 25, 2024, the Court ordered, on pain of contempt and/or sanctions, that MMA "provide the Court with a complete and comprehensive list of every case currently pending in this District in which it intends to seek attorneys' fees and/or costs." Because MMA and its creditors expressly have waived any right to any fees or costs in the settled *Ricks* litigation, MMA objects to this Court's continued

exercise of jurisdiction in the *Ricks* matter. In addition, as stated in its March 15 pleading, **MMA maintains that there are no EDLA cases in which it intends to intervene or file liens to recover attorney's fees.** As MMA previously explained in response to the Court's March 6, 2024 Order, **MMA does not intend to intervene in any cases pending in this Court, so there is no list to provide reflecting pending EDLA cases in which MMA intends to seek attorney's fees.**

However, **MMA is considering filing lawsuits against Daly & Black and Galindo Law**, which MMA believes have breached agreements with MMA and which have taken action that may give rise to various causes of action for relief related to Daly & Black's and Galindo Law's handling of Hurricane Ida claims for former MMA clients. **In a good faith attempt to comply with the Court's order, MMA believes that fees received by Daly & Black in the following lawsuits may be at issue in a potential future lawsuit against Daly & Black** . . . .

*Ricks*, No. 23-2844 (E.D. La. Mar. 29, 2024) (Doc. No. 50) (emphasis added). MMA then went on

to provide a list of over 150 cases spanning nearly four pages.

MMA concluded its filing by stating:

**In addition to the cases included on this list**, if Daly & Black has entered into fee agreements with other law firms related to other cases pending in the Eastern District of Louisiana or otherwise participates in lawsuits for former MMA clients, **MMA believes that attorney's fees from those cases could be the subject of a future lawsuit against Daly & Black**.

With respect to Galindo Law, Galindo Law entered into joint representation agreements with MMA in many cases, but MMA is not aware of any cases in the Eastern District of Louisiana in which attorneys from the Galindo Law firm are currently enrolled. However, MMA believes that the Galindo Law firm may be receiving attorney's fees from cases pending in the Eastern District of Louisiana that are the subject of its joint representation agreements with MMA and **may seek to discover that information in a future lawsuit against Galindo Law.**

*Id.* (emphasis added). No cases pertaining to Morris Bart or any other law firm were listed by

MMA—clearly telling the Eastern District judges that the only fees at issue were those involving:

(1) the Daly & Black cases listed; (2) the possible Daly & Black cases that could involve other

firms; and (3) the Galindo Law cases in which it had a joint representation agreement—although

MMA conceded that it was unaware of any such cases that were actually pending in the Eastern

District of Louisiana.

The MMA filing and the *Ricks* order demonstrate that well before MMA ever filed for bankruptcy, MMA had every opportunity to inform the Eastern District of its intention to try to collect attorneys' fees or costs in the Hurricane Ida cases. Instead, MMA did the opposite. MMA made several affirmative representations to the Eastern District that it did not intend to intervene or otherwise pursue the collection of attorneys' fees or costs for any case pending in the Eastern District with the two exceptions of cases involving two law firms—Daly & Black or Galindo Law—because MMA had written agreements with those firms. This was a voluntary waiver that was accepted by the court in the *Ricks* order.[7] Judge North documented the consequences of the court's acceptance and reliance on these representations:

> As the Court noted in its January 26 Order initiating the proceedings described above, **the intention of the Court in initiating those proceedings was to address a circumstance in this District that has hampered efficient resolution of insureds' claims and taxed the resources of the Court** – certain insurers' insistence that settlement checks include MMA as a payee based upon their status as former counsel for settling insureds. The refusal to issue settlement checks without MMA's name as a payee has (1) delayed payments to insureds even after settlement, (2) required unnecessary motion practice seeking court orders that insurers issue checks omitting MMA as a payee, and (3) caused the judges of this Court, including this one, to make inquiries of MMA's counsel on a case-by-case basis whether MMA intended to seek a fee in individual cases. **This entire process – caused directly by MMA's malfeasance in this District – has been a tremendous drain upon the bar and this Court, and a waste of valuable resources, the most important of which is time.** Considering that hundreds of cases involving former MMA clients remain open in this District, continuing on this path is simply untenable.

---

[7] MMA has argued that it did not expressly waive its right to attorneys' fees and costs because it couched its waiver in terms of "not seeking to intervene." *See, e.g.*, (No. 4:24-CV-4446, Doc. No. 22 at 18). The Court recognizes that the actions here in the Southern District of Texas are bankruptcy adversary proceedings—not formal interventions in the underlying cases. This argument is, at best, wordsmithing at a level that is unbecoming of the legal profession. Moreover, if the argument is truly accurate, it glosses over the fact that MMA misled all of the judges in the Eastern District of Louisiana. It listed all of the cases in which it might seek fees. It is bound by that representation. This Court chooses to believe that the lawyers representing MMA in these bankruptcy proceedings were not aware of the extent of the representations made in the Eastern District and that this situation was caused by a miscommunication rather than a blatant attempt to deceive the judges of the Eastern District.

> **The Court now finds, based upon MMA's multiple representations that it does not intend to seek fees or costs <u>in any case now pending in this District</u>, that this tortured process can and should come to an end.**

*Ricks*, 2024 WL 1750738 (internal citations omitted) (bold emphasis added). Thus, before the bankruptcy was filed, all claims except those contractual or quasi-contractual claims involving only two law firms were extinguished. All rights to make any other claims were gone.

The court then went on to recount that it was of no matter to the courts of the Eastern District if there were contractual disputes between law firms or disputes between MMA and its litigation funders. Its language, while arguably imprecise, did not change the stipulations and waivers that MMA made as to all Eastern District cases. The court wrote:

> **It matters not to the resolution of Hurricane Ida cases in this District that one law firm might sue another law firm for breach of a contract between them.** That potential is of no moment to either insured <u>or insurer</u>. It is a matter strictly between the various law firms. It follows then that there is no basis, **given MMA's affirmative statement of its intention to walk away from fees and costs from cases pending here [in the Eastern District of Louisiana], for settling insurers to continue to insist on including that firm on settlement checks.**
>
> Similarly, the fact that the Funds have sent "lien letters" to various law firms representing former MMA clients suggesting they have a "perfected security interest in and to the McClenny Moseley & Associates, PLLC, Law Firm Proceeds" in cases involving those clients is not a matter impacting the insureds or insurers. Whatever dispute arises out of these claims to fees by the Funds will be a dispute between the Funds and a law firm over some <u>portion</u> of fees received by that law firm. That dispute will not impact the actual parties to the litigation.

*Id.* (bold emphasis added). This opinion, regardless as to how one stretches one's interpretation, did not alter MMA's clear "intention to walk away from fees and costs from the cases pending [in the Eastern District]." *Id.* The genesis of the problem raised in this Motion for Summary Judgment seems to be the following paragraph where the court wrote:

> Based upon all the foregoing, the Court finds that MMA has knowingly and completely waived its rights to intervene or otherwise seek to recover fees and/or costs in this or any other lawsuit pending in this District. **This finding is without**

22

**prejudice to MMA's or the Funds' right to bring whatever claims may exist for breach of contract (or under any other theory) against MMA's successor law firms.** But the Court's finding here does act to remove as an impediment to settlement <u>and payment</u> of settlement proceeds the <u>possibility</u> that MMA could, at some point in the future, seek to intervene for fees and/or costs in any case pending here. That possibility is now eliminated.

*Id.* (bold emphasis added).

It is clear, given the history of MMA's conduct, the hearings and motions, and the outright waiver of any claims by MMA, that Judge North did not intend to reopen Pandora's box for a new round of fee claims in every Eastern District case with this single sentence. Instead, this sentence was intended to convey that the court accepted MMA's reservation of contractual rights to proceed against the Daly & Black and Galindo Law firms. It was clear in its briefing that MMA claimed to have contracts with these two firms and intended to file a breach of contract claim against these two firms. MMA only mentioned these two firms by name in its pleadings on this issue and only listed cases involving the Daly & Black law firm for "future litigation." Given the history recounted above, it is clear that the phrase "or under any other theory" was to cover the possibility that MMA's litigation funders might seek to pursue these two firms as well—even if they did not have a contract with them. Hypothetically, if this *Ricks* order is considered to be ambiguous—which given the robust context of the ongoing tension and allegations of misconduct, this Court does not believe it to be—the wording of the order does not change MMA's earlier written waiver of all its rights to fees and costs in Eastern District cases. It was a clear waiver with only two noted exceptions: the Daly & Black and the Galindo Law firms. The waiver was made on multiple occasions, and it was made in a fashion that MMA intended that all parties and all courts in the Eastern District would rely upon it. No one objected to Judge North's order, and the Report and Recommendation was adopted by Judge Vance. 2024 WL 1740172. The *Ricks* order is final. The case is closed.

23

Given the subsequent course of events, it is clear that all of the courts of the Eastern District have continued to rely on this pre-bankruptcy waiver. This waiver has not been set aside nor has any party in the bankruptcy case asked the Eastern District to set it aside. The Eastern District courts have reinforced their interpretation of this waiver on a multitude of occasions—albeit, *after* MMA filed for bankruptcy here in the Southern District of Texas. On December 12, 2024, Judge North—before whom the waiver was made and the author of the *Ricks* order—explained the scope of his prior order on MMA's waiver:

> **In a previous matter in this Court, the undersigned issued an Order—never appealed by MMA—finding that MMA had knowingly and voluntarily forfeited its rights to intervene or <u>otherwise seek to recover fees and/or costs in any case then pending in this District, including this one</u>**. During the [] settlement conference, the Court was made aware of certain pleadings, arguments, and rulings that have recently been made in the adversary proceeding, *MMA Law Firm, PLLC v. Morris Bart, LLC*, pending in the Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Case").
>
> After reviewing the docket of that case and the associated master case, **the Court is now aware that MMA has taken the position in the Bankruptcy Court that it never did, nor did it intent to, waive or forfeit its rights to recover fees in its former cases pending in this District as of April 5, 2024. The firm has also apparently taken the position in the Bankruptcy Case that this Court's Order in *Ricks* did not have the effect of forfeiting said rights to fees and/or costs in cases pending here. Neither of those things is true.**
>
> It now seems that, despite this Court's best efforts, **MMA's tactics and doublespeak continue to interfere with its former clients' full recoveries**, some three years-plus after Hurricane Ida made landfall. MMA's misrepresentations in the Bankruptcy Case have also apparently resulted in the presiding Judge in that matter issuing a preliminary injunction against Plaintiffs' counsel, Morris Bart, LLC, that, among other things, requires
>
>> that, after the entry of this Order, a 33.3% attorneys fee portion of any settlement or award in a Former Case, or, if an attorneys fee portion greater than 33.3% is collected, the amount of attorneys' fees collected, as well as the amount of expenses that MMA claims in that Former Case, shall be held in trust by Morris Bart until further order of this Court . . . .

Case No. 24-03127 (Bankr. S.D. Tex.). The scope of the term, "Former Cases," as used in the Bankruptcy Court's Injunction is not entirely clear, as it falls within this statement: "The Debtor asserts that is has an interest in attorney's fees and expenses in numerous cases where the Debtor's former client are now clients of Morris Bart, LLC ('Former Cases')." *Id.*

> **What is clear is that the term "Former Cases" and the Bankruptcy Court's Injunction cannot describe or apply to cases in <u>this</u> District in which MMA formerly represented litigants because MMA affirmatively waived and forfeited any rights it might have had to fees and costs in all of those cases before filing its Chapter 11 Voluntary Petition.**

*Foskey*, No. 23-5316 (E.D. La. Dec. 12, 2024) (No. 4:24-CV-4446, Doc. No. 19-45) (emphasis added).

This interpretation was not solely held by Judge North. The entire bench of the Eastern District of Louisiana, *en banc*, held:

> The Court recently learned that [MMA], a debtor in bankruptcy in the Bankruptcy Court for the Southern District of Texas, has taken the position in that Court that it is entitled to recover fees and/or costs from its former cases pending in this District . . . . **The Chief Magistrate Judge has issued Orders in two Hurricane Ida cases in this District making clear that MMA voluntarily and knowingly waived and forfeited whatever rights it may have had in fees and/or costs in its former cases in this District before it declared bankruptcy . . . . [MMA] has no rights to fees and/or costs in this District by virtue of its knowing and voluntary prepetition waiver of said rights.**

*In re: Hurricane Ida Litigation* (E.D. La. Dec. 19, 2024) (en banc) (No. 4:24-CV-4446, Doc. No. 19-46) (bold emphasis added).

These orders have not been appealed by any person or entity. These are final orders. It is not as if MMA or its lawyers are unequipped to appeal orders related to fees. They have done so before. In fact, they successfully appealed the Western District order cited above to the Fifth Circuit. *McClenny, Moseley & Associates PLLC*, 2024 WL 2874371.

Although the orders quoted immediately above were filed after MMA filed for bankruptcy—and therefore, one could argue the orders have minimal, if any, effect on the pending

bankruptcy—the orders do not involve new matters or even raise new issues. These orders—especially the two cited above—are merely reaffirming and offering guidance on how to interpret the pre-bankruptcy order and the waivers made by MMA which were relied upon by the parties and the courts since that time. After all, these explanations were only required because MMA obtained a preliminary injunction against Morris Bart in Bankruptcy Court. These further clarifications should not be a surprise to any court or party given that the sweeping injunction potentially has a docket-wide impact, and that the Bankruptcy Court has turned down all efforts to extricate the Eastern District cases from the Debtor's overall attempt to roundup its assets.

Upon reviewing the significant history in the case—at all stages of this litigation—and relying on the clear waiver MMA made in the Eastern District, this Court holds as a matter of law that MMA voluntarily and knowingly waived its right to fees and costs as to all Eastern District cases pending on or before March 15, 2024 with two exceptions. First, MMA may pursue any contractual rights that it may have with the Daly & Black and/or Galindo Law firms. Secondly, MMA and/or its lawsuit funders may pursue any noncontractual rights it has against these same two firms. That being said, all other claims for fees and/or costs from cases in the Eastern District of Louisiana have been waived.

This holding is not only supported by the law and the record, but also by sound judicial policy. It is clear that the pre-waiver setting for the show cause order in *Ricks* was one where the presiding judge was already aware of what that court (and other courts) considered to be numerous acts of misbehavior. That court had ordered MMA to produce certain information and to appear before it to explain its conduct and/or justify any fee request in light of its misconduct. Rather than do either, MMA chose to try to moot any hearing concerning the fees/costs issue, in which it might be confronted with its various alleged misdeeds, by waiving all claims to those fees and costs. This

tactic was eventually successful, and it avoided what might have been a very unpleasant or embarrassing (or worse) hearing where its course of conduct would be a central issue. One might even surmise that, in this circumstance, MMA's discretion was the better part of valor.

In a vacuum, this Court cannot fault such a tactic. Nevertheless, one cannot make a representation in order to escape potential disciplinary action, then pack up one's tent, go home, file bankruptcy and then renege on those representations to another federal court. This Court finds such a strategy to be totally unacceptable. Neither this Court nor any other federal court of which this Court is aware would tolerate such gamesmanship. It is at best misleading, and at worst, a fraud upon the courts.[8]

At the very least, if MMA wanted to second-guess the consequences of the waiver and reverse course, it should have petitioned the appropriate Eastern District court to withdraw its waiver, or it should appeal those orders to the Fifth Circuit. It has done neither, and consequently, those orders still govern. The fundamental principles of law, judicial economy, sound jurisprudence, and the most basic tenets of legal ethics demand that courts are entitled to rely on representations and waivers made in response to a show cause order because courts are entitled to presume that those representations are intentional, truthful, and meant to be relied upon by parties, counsel, and courts. After all, that is the purpose of Federal Rule of Civil Procedure 11. FED. R.

---

[8] The Court feels compelled to point out that while the Moseley Declaration (creatively) addresses the waiver issue, Moseley does not explicitly deny that MMA waived its right to attorneys' fees and costs in the Eastern District. Instead, he states that he "disputes [the] contention" that "MMA waived its right to recover attorneys' fees based on two court orders entered by the United States District Court for the Eastern District of Louisiana." (Bankr. No. 24-3127, Doc. No. 94-1 at ¶ 28). Moseley merely cites the *Ricks* order for his conclusion that Judge North gave MMA permission to "bring whatever claims exist under any theory against MMA's successor law firms." (*Id.*). While Moseley framed these statements in terms of the *Ricks* order, Moseley does not deny that MMA waived its right to attorneys' fees and costs when it failed to list any Eastern District cases (other than those against Daly & Black or Galindo Law) from which it intended to seek fees or costs. *Ricks*, No. 23-2844 (E.D. La. Mar. 29, 2024) (Doc. No. 50).

CIV. P. 11(b) ("By presenting to a court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry under the circumstances: it is not being presented for any improper purpose."); *Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 838 (S.D. Tex. Mar. 4, 2016) ("And, of course, when parties appear in court, the system depends on them telling the truth."); *Tesco Corp. v. Weatherford Intern., Inc.*, 2014 WL 4244215, at *7 (S.D. Tex. Aug. 25, 2014) ("Just as with witnesses testifying truthfully under oath, the proper administration of justice depends upon counsel being completely forthright with the Court."). That is how this Court treats any such representation made to it, and it is how this Court treats MMA's statements made to the judges of the Eastern District of Louisiana.

Importantly, Rule 3.3 of the Louisiana Rules of Professional Conduct (which tracks the American Bar Association's Model Rules of Professional Conduct) mandates that a lawyer be candid with any judge before which he or she appears. Rule 3.3(a) states that "a lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." La. R. Pro. Conduct Rule 3.3(a)(1); MODEL RULES OF PRO. CONDUCT § 3.3(a)(1). Indeed, the Supreme Court of Louisiana has applied this Rule to attorneys in disciplinary actions for making false statements in court. *See In re Ungarino*, 330 So.3d 1077, 1085 (La. 2022) (per curiam) (finding that a lawyer violated Rule 3.3 by "lying about the true intent" of an *ex parte* communication). Moreover, under this Rule, any lawyer that inadvertently provides a false statement to the court must make every effort to correct the record. *See* La. R. Pro. Conduct Rule 3.3(a)(3); MODEL RULES OF PRO. CONDUCT § 3.3(a)(3) ("If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence

28

and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.").

If the list containing the cases from which MMA was going to seek fees and costs did not include Morris Bart cases, this misrepresentation should have been corrected before the list was relied upon by the judges of that District. To this Court's knowledge, that correction has not been made. While it would be hard to conceive that the listing of the cases was done inadvertently, the failure to "correct it" is on its face problematic. No party to the motions under consideration in this Order has provided any competent summary judgment evidence demonstrating that MMA or its counsel have taken any remedial measures with regard to those representations.

The Court holds that MMA must honor its own representations.

**B.  The Path Forward**

The second issue this Court feels the need to address has less to do with the merits of the motions filed by Morris Bart and more to do with how these cases will proceed in the future. The Bankruptcy Court has written:

> The Court finds that this is precisely what MMA has done by initiating the instant Adversary Proceeding because MMA is seeking to recover fees from Morris Bart and is not intervening in any of the MB/MMA Cases.

> On December 12, 2024, Judge North entered an order interpreting the impact of his April 5, 2024 order differently. The December 12, 2024 order explained that the April 5, 2024 order "does not merely limit MMA's rights to file interventions or liens in cases pending here – it unequivocally finds that the Firm waived its rights to seek fees and costs in any way, shape, or form." It went on to say that, "[i]t makes no difference" that "MMA reserved its rights to sue successor law firms for damages for breach of contract," because those claims are for damages, not "some non-fungible *res* that must be embargoed to be protected."

> **However, the December 12, 2024 order is not binding on this Court**. This Court entered an injunction on July 15, 2024 expressly enjoining Morris Bart from taking "any action, directly or indirectly, to prosecute claims regarding the Debtor's interest or any entitlement to fees or costs without further order from this Bankruptcy Court."

29

*In re MMA Law Firm, PLLC*, 673 B.R. 174, 204 (Bankr. S.D. Tex. Aug. 12, 2025) (bold emphasis

added). Meanwhile, in the *en banc* order of the Eastern District, the judges wrote:

> The Chief Magistrate Judge has issued Orders in two Hurricane Ida cases in this
> District making clear that MMA voluntarily and knowingly waived and forfeited
> whatever rights it may have had in fees and/or costs in its former cases in this
> District before it declared bankruptcy . . . . **The Court has held that, because of
> this pre-petition waiver of rights, no portion of attorneys' fees or costs from
> cases pending in this District can be considered property of the MMA
> bankruptcy estate and that the Bankruptcy Court's requirement that
> successor firms hold such fees and costs in trust is inapplicable to cases
> pending in this District.**

*In Re: Hurricane Ida Claims* (E.D. La.) (No. 4:24-CV-4446, Doc. No. 19-46) (emphasis added).

At first blush, there seems to be an ongoing dispute between the Bankruptcy Court in the

Southern District of Texas and the District and Magistrate Judges of the Eastern District of

Louisiana. This conflict, if it indeed exists, is not insurmountable.

First, regarding the Bankruptcy Court, it goes almost without saying that any bankruptcy

court has the power to implement and enforce its own orders. 11 U.S.C. § 105 ("The court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title."). Additionally, the Bankruptcy Court has the jurisdiction to issue orders to streamline

bankruptcy proceedings. Any bankruptcy court also has the jurisdiction and the power to issue

orders that manage the property of the bankruptcy estate. *Id.* Bankruptcy estates undoubtedly

include "all legal or equitable interests of the debtor in property as of the commencement of the

case." 11 U.S.C. § 541. In Chapter 11 bankruptcy proceedings, the trustee (or the debtor in

possession) has the duty to "collect and reduce to money the property of the estate for which such

trustee serves." 11 U.S.C. § 704. Moreover, when there is a dispute over the collection of

bankruptcy property, a trustee or debtor in possession can initiate an adversary proceeding to

litigate the ownership over the putative bankruptcy estate property. FED. R. BANKR. P. 7001.

Meanwhile, the United States District Judges and the United States Magistrate Judges of the Eastern District of Louisiana are equally empowered to interpret and enforce their own orders. 28 U.S.C. § 1651. In fact, in this instance, these judges have two decided advantages. First, and most importantly, who would be better situated to interpret an order than the judge that presided over the hearing and wrote the order under consideration and the judges that adopted and have relied upon that order? The answer clearly is: no one. Secondly, as may be more applicable to the remaining issues not addressed in this order, the judges of the Eastern District of Louisiana have an innate advantage in the interpretation and application of Louisiana law. While both the Bankruptcy Judge and this Court have the capability of researching, interpreting, and enforcing the laws of a sister state (even one whose laws trace back to the Napoleonic Code), clearly those who are educated, trained, and work on a daily basis with those laws have a distinct advantage.

This Court finds that the two orders quoted-above are not necessarily irreconcilable. First, the Bankruptcy Court has emphasized the post-bankruptcy orders (the *Foskey* order and the *In re Hurricane Ida Claims* order), wherein the Eastern District judge(s) explained their interpretation and reliance on the pre-petition conduct and order (the *Ricks* order). Without question, these pre-petition activities are important. This Court proceeds with that emphasis in mind. Second, the Bankruptcy Court seems to concentrate only on the exact wording of the *Ricks* order and the later *Foskey* order, while not focusing on the background facts and circumstances surrounding the MMA waiver, the actual wording and intent of the waiver itself, and the list of cases provided by MMA in response to the show cause order. This Court finds this history and context to be of great importance when interpreting and applying the substance of the pre-petition order. As explained in detail above, such history elucidates the intention of the holding in the *Ricks* order.

The Eastern District's *en banc* order, while post-petition, was no doubt intended to aid the resolution of the issues the Southern District of Texas currently has before it. That order makes it clear that all of the judges of the Eastern District found that MMA's pre-petition waiver waived all claims for fees and costs (with the two exceptions being the Daly & Black and Galindo Law situations). While this *en banc* order was post-petition, the substance of the order is merely an explanation of the pre-petition status, already in place before the bankruptcy was filed. The pre-petition *Ricks* order alone establishes that there can be no legal or equitable interest of the Debtor in the proceeds of any case in the Eastern District. The later *Foskey* and *en banc* orders merely confirm that conclusion. Whatever interests that may have existed in those attorneys' fees and costs were voluntarily extinguished by MMA **before** it filed for bankruptcy.[9] While one can read the *en banc* order as possibly treading on the jurisdiction of the Bankruptcy Court, a fairer reading makes it clear the court is merely stressing that the injunction/embargo directed at cases in which MMA may be seeking compensation has no effect on cases that were or are filed in the Eastern District due to MMA's pre-petition actions. Hence, there are no such Eastern District cases to which the injunction could apply. In other words, the fact that MMA is now in bankruptcy does not empower anyone to revive claims that have clearly been extinguished by waiver and court order.

While this discourse may be viewed as unnecessary and irrelevant to the actual summary judgment motions directed at the Eastern District cases, this Court obviously finds it important enough to include given the tension that seems to exist between the lawyers in this case and to preclude any argument that would try to pit one court's order against a sister court's order.

---

[9] Some may question this Court's use of "voluntarily." It is clear that MMA waived all rights in order to avoid having to answer or explain its actions with respect to allegations of its misconduct in the Eastern District. While it may have felt compelled to make the waiver to escape a hearing on the propriety of its actions, that compunction was created by its own conduct—not because of any action taken by a court or third party. The waiver was clearly a strategic decision.

This Court finds that MMA waived all its rights to attorneys' fees and costs in the Eastern District of Louisiana (with the exceptions of contractual or quasi-contractual rights that MMA or its litigation funders might have against the Daly & Black or Galindo Law firms). This Court grants the Motion for Summary Judgment filed by Morris Bart, as to any and all claims for attorneys' fees and costs based upon the underlying Eastern District cases. This Court will sever this issue from the other issues based upon substantive Louisiana state law included in the Motion (and which may be the subject of a certification request to the Supreme Court of Louisiana), so that this Order becomes final and appealable. A separate judgment compliant with Rule 58 will accomplish this goal.

## IV.    Conclusion

For the foregoing reasons, the Court grants-in-part Morris Bart's Motion for Summary Judgment (No. 4:24-CV-4446, Doc. No. 19). The Court reverses-in-part the Bankruptcy Court order denying summary judgment to the extent that the order denied summary judgment for the collection of any attorneys' fees or costs arising out of any underlying case pending in the Eastern District of Louisiana on or before March 15, 2024. (Bankr. No. 24-3127, Doc. Nos. 104, 105). The Court holds that, as a matter of law, MMA made an affirmative pre-petition waiver of its right to collect any attorneys' fees or costs from any case pending in the Eastern District of Louisiana.

It is so ordered.

Signed on this the _23_ day of January 2026.

Andrew S. Hanen
United States District Judge